# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

ALI SAEE, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

ENSERVCO CORPORATION, RICHARD MURPHY, MARJORIE HARGRAVE, CROSS RIVER PARTNERS, L.P., and CROSS RIVER CAPITAL MANAGEMENT LLC,

Defendants.

File No. 1:22-cv-1267-DDD-STV

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... II

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 1

I.    The CAC Fails To Plead Specific Facts Giving Rise To A Strong
      Inference Of Scienter. ................................................................................ 1

      A.    The Opposition's scienter arguments are based on improper
            fraud-by-hindsight. ....................................................................... 2

            1.    The Opposition's "motive" argument fails for many
                  reasons ................................................................................. 2

            2.    The Opposition's other "motive" arguments are
                  insufficient under binding precedent ...................................... 5

            3.    In arguing for scienter based on "magnitude," Plaintiff gets
                  both the law and the facts wrong ......................................... 10

            4.    Scienter may not be inferred from made-up allegations
                  about the departures of Hargrave and Donovan Kelly .......... 12

            5.    Unpleaded contentions about the dismissal of Enservco's
                  auditing firm cannot support an inference of scienter .......... 13

            6.    Defendants' positions with Enservco cannot support an
                  inference of scienter. ........................................................... 14

            7.    Inadequate internal controls cannot support an inference of
                  scienter. ............................................................................. 15

            8.    Enservco has not waived any argument about the lack of
                  scienter with regard to liquidity statements ......................... 15

            9.    The Opposition does not create an inference of scienter by
                  alleging "recklessness." ...................................................... 16

      B.    The more cogent and compelling inference is that Enservco made
            benign mistakes .......................................................................... 18

II.   Plaintiffs Fail to Adequately Plead Loss Causation. ................................. 20

CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                            **Page(s)**

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
   827 F.3d 1229 (10th Cir. 2016) ...................................................................6, 11, 14, 21

*Andropolis v. Red Robin Gourmet Burgers, Inc.*,
   505 F. Supp. 2d 662 (D. Colo. 2007)....................................................................10, 19

*City of Philadelphia v. Fleming Cos.*,
   264 F.3d 1245 (10th Cir. 2001) ...........................................................................1, 5, 15

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
   141 S. Ct. 1951 (2021)................................................................................................ 21

*In re Crocs, Inc. Sec. Litig.*,
   774 F. Supp. 2d 1122 (D. Colo. 2011)................................................................19, 20

*In re Elan Corp. Sec. Litig.*,
   543 F. Supp. 2d 187 (S.D.N.Y. 2008).......................................................................... 6

*In re Emex Corp. Sec. Litig.*,
   2002 WL 31093612 (S.D.N.Y. Sept. 18, 2002) ............................................................ 6

*In re Gold Res. Corp. Sec. Litig.*,
   957 F. Supp. 2d 1284 (D. Colo. 2013)........................................................................ 16

*In re Gold Res. Corp. Secs. Litig.*,
   776 F.3d 1103 (10th Cir. 2015) ....................................................................11, 18, 20

*In re Hertz Global Holdings*,
   905 F.3d 106 (3rd Cir. 2018) .............................................................................12, 20

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   667 F.3d 1331 (10th Cir. 2012) ................................................................1, 5, 17, 18

*In re Manulife Fin. Corp. Sec. Litig.*,
   276 F.R.D. 87 (S.D.N.Y. 2011)................................................................................ 20

*In re Molson Coors Beverage Co. Sec. Litig.*,
   2020 WL 13499995 (D. Colo. Dec. 2, 2020) .......................................................*passim*

*In re PXRE Grp., Ltd. Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y. 2009) ............................................................... 6

*In re Qwest Commc'ns, Int'l, Inc.*,
   396 F. Supp. 2d 1178 (D. Colo. 2004) .......................................................... 12

*In re Zagg Inc. Sec. Litig.*,
   797 F.3d 1194 (10th Cir. 2015) ............................................................. 15, 16

*MHC Mut. Conversion Fund v. Sandler O'Neill & Partners*,
   761 F.3d 1109 (10th Cir. 2014) ............................................................... 5, 21

*Oregon Laborers Emp'rs Pension Trust Fund v. Maxar Techs. Inc.*,
   2020 WL 5500457 (D. Colo. Sept. 11, 2020) ................................................ 7

*Pirraglia v. Novell, Inc.*,
   339 F.3d 1182 (10th Cir. 2003) ................................................................ 5, 6

*Podraza v. Whiting*,
   790 F.3d 828 (8th Cir. 2015) ................................................................ 6, 20

*Smallen v. The Western Union Co.*,
   950 F.3d 1297 (10th Cir. 2020) ................................................................. 16

*Sorkin, LLC v. Fischer Imaging Corp.*,
   2005 WL 1459735 (D. Colo. June 21, 2005) ............................................... 13

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ................................................................... 20

*Wolfe v. Aspenbio Pharma, Inc.*,
   587 F. App'x 493 (10th Cir. 2014) ............................................................ 14

**Federal Statutes**

15 U.S.C. § 78u-4(b)(2) .................................................................................. 1

## INTRODUCTION

Plaintiff's opposition brief (the "Opposition") attempts to meet Plaintiff's "heavy burden," *In re Level 3 Comm'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012), through three improper means this Court should reject. The Opposition (1) makes arguments not found in the CAC, and hence which may not be considered; (2) urges a theory of scienter based on legally impermissible "fraud by hindsight"; and (3) and ignores the CAC's allegations that provide a far more cogent and compelling reason for the Restatements: benign errors. Nothing in the Opposition identifies even a single confidential witness claiming that any Defendant made a false statement with scienter. *See In re Molson Coors Beverage Co. Sec. Litig.*, 2020 WL 13499995, at *8 (D. Colo. Dec. 2, 2020) (this "cuts against" scienter). The Court should dismiss.

## ARGUMENT

**I.    The CAC Fails To Plead Specific Facts Giving Rise To A Strong Inference Of Scienter.**

The Opposition ignores the elevated pleading standard requiring securities-fraud plaintiffs to "state *with particularity facts* giving rise to a *strong inference* that the defendant acted with the required state of mind," 15 U.S.C. §78u-4(b)(2) (emphases added). It conjures up a theory of "motive" (Opp.13-16), but allegations that Defendants had a "motive" and an "opportunity" are typically "not sufficient." *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1262 (10th Cir. 2001).

1

### A. The Opposition's scienter arguments are based on improper fraud-by-hindsight.

### 1. The Opposition's "motive" argument fails for many reasons.

The Opposition's argument about motive—that Enservco lied to investors in order "to successfully refinance its remaining debt" (Opp.13)—fails for many reasons.

First, it is based on the incorrect premise that Enservco's lenders were unaware of the Restatements before the refinancing closed. Plaintiff is wrong because he cynically ignores the reporting dates disclosing (1) the Restatements (March 22, 2022) and (2) the refinancing (March 24, 2022). *See* Exs. 4, 21.[1] These publicly-available SEC filings show that Enservco decided to restate *before* the refinancing closed. The CAC never alleges that the reporting dates on these SEC filings are wrong.

Nor does the CAC allege that any Defendant withheld the March *22* Restatement from the lenders when closing the refinancing on March *24.* The most "cogent and compelling" inference from the timing of these events is that all lenders[2] knew Enservco would be restating its financials, and that such knowledge did not impact the refinancing.

---

[1] Citations to "Ex. ___" are to exhibits filed with the opening brief or to the Declaration of Jeffrey P. Justman in support of this Reply.
[2] The lenders in the refinancing were: (1) Utica Leaseco, LLC ("Utica") and (2) LSQ Funding Group, LLC ("LSQ"). *See* Ex. 21.

2

Second, Plaintiff's motive argument ignores the lenders' legal rights to sue Enservco if any material term—such as an accounting restatement—had not been disclosed. The agreement with Utica represented that Enservco's financial statements had been "prepared in accordance with GAAP," "fairly presented [its] financial condition and the results of its operations," and that there had been "no material adverse change in such conditions or operations." (Ex. 22, ¶3.) Utica was provided with "all of [Enservco's] Forms 10-K and 10-Q" for applicable periods. (*Id.* ¶4.) A condition precedent to the refinancing was that "[a]ll representations and warranties . . . shall be true and correct." (*Id.* ¶5.) If there were any "inaccuracy" in any "representation or breach of warranty," including in any "financial statement," that would constitute an Event of Default. (*Id.* ¶15(i)). And in an Event of Default, Utica could "proceed at law or in equity, to enforce specifically Lessee's performance or to recover damages," or any number of other actions. (*Id.* ¶16(1).)[3]

*No lender has taken any of these steps.* It is utterly implausible that any lender would have forgiven a restatement that had not been disclosed pre-refinancing. The most cogent and compelling inference from the non-actions of its lenders is the truth: Enservco informed the lenders of the restatements *before* the refinancing closed. Whatever Plaintiff makes up in the Opposition, the CAC never alleges otherwise.

---

[3] Enservco's lending agreements with East West bank include similar provisions. (*See* Ex. 23, at 14) (representing that there was "no material adverse change" in Enservco's financial condition).

3

Third, Plaintiff's motive argument ignores that Enservco has been represented by sophisticated corporate counsel at Maslon LLP in its securities and corporate transactions. (*See* Ex. 24 ¶8(b).) It is implausible for Plaintiff to imply that sophisticated counsel would ever allow a client to move ahead with a financing transaction if an impending Restatement had not been disclosed.

Fourth, Plaintiff vastly overstates the "threat" to Enservco's "survival" allegedly posed by its "looming debt." (Opp.14.) Enservco's disclosures were much more qualified: they stated that Enservco "may" (not "must") have to "curtail" (not "terminate") its "operations that would adversely affect [its] ability to continue as a going concern." (*See* Ex. 2.) Such "going-concern" disclosures, which are commonly made by hundreds of public companies,[4] did not reasonably implicate an "existential threat," Plaintiff's hyperbole notwithstanding. (Opp. 14.)

Finally, Plaintiff's motive argument—that Enservco's "*very existence* hinged on its ability to secure a new credit facility large enough to cover its $15 million debt" (Opp.15)—is *factually wrong*. Enservco actually retired the debt for no more than $9.4 million,[5] yet it remains alive and well today.

---

[4] "Going concern" disclosures impacted 28% of companies during the 2008 financial crisis and even during a low period, still affect nearly 18%. *See* Ex. 25, *Audit Analytics,* "Going Concerns A 21 Year Review" at 2, 4 (Feb. 2022), *available at*: https://www.auditanalytics.com/doc/Going_Concerns_A_21-Year_Review.pdf

[5] Enservco disclosed that "in full satisfaction of [its] obligations under the East West Bank credit facility, the Company paid East West Bank $8.4 million in cash," plus up to $1 million from other sources. (Ex. 21, at Item 1.01.)

In short, Plaintiff's motive argument requires the Court to stack impermissible "inference upon inference"—that the lenders did not know of the Restatements, that they chose not to sue Enservco when they learned of them, that lawyers and other advisers would allow such non-disclosures, and that Enservco's existence hinged on an ability to refinance $15 million in debt it never refinanced. *See In re Level 3*, 667 F.3d at 1345. Plaintiff's motive argument is a cynical, made-up, fraud-by-hindsight argument the Court should reject. *See City of Philadelphia*, 264 F.3d at 1262.

### 2. The Opposition's other "motive" arguments are insufficient under binding precedent.

Plaintiff's other "motive-based" arguments (Opp.15) similarly lack merit. The argument that Hargrave had "especial cause" to "fear she would lose her sole source of full-time income" (*id.*) is insufficient because such concerns would apply to all corporate officers. *See In re Level 3*, 667 F.3d at 1346. It is also wrong, and significantly so. (*See* Ex. 26, at 24) (listing Hargrave's $167,282 income from other board service). The one case Plaintiff cites, *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 (10th Cir. 2003) (cited at Opp.13) is far afield. There, the officers had special cause to fear for their jobs because the *prior* executives had been fired for lack of performance, and there was "direct evidence of scienter" in the form of a sworn declaration attached to the complaint. Neither is present here. *See MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1122 (10th Cir. 2014) (Gorsuch, J.) (rejecting a similar argument).

5

Even Plaintiff's argument about maintaining Enservco's "survival" (Opp.14) does "not present an unusual or heightened motive and does not support a strong inference of scienter." *Podraza v. Whiting*, 790 F.3d 828, 840-41 (8th Cir. 2015). The rule is that a purported "motive" to buy time to fix a difficult financial situation at most suggests a "generalized corporate motive" that "would not contribute to an inference of scienter." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238-39 (10th Cir. 2016). Plaintiff cannot survive dismissal by concocting a "corporate survival" motive that would create a rule-swallowing exception for any company with liquidity constraints. *See In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 530-532 (S.D.N.Y. 2009) (the desire to "raise money that is 'desperately needed' or necessary 'to protect the very survival' of a company" is too generalized a motive).[6]

Plaintiff's argument that the lack of inside stock sales does not "weigh against" an inference of scienter (Opp.16) is dead wrong. (*See* Opening.Br.27-28) (citing cases). *Pirraglia*, cited by Plaintiff, stands only for the proposition that courts will not rely upon a lack of such sales to conclude that defendants lack *any* motive at all. 339 F.3d at 1191 n.12.

---

[6] *See also In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 216 (S.D.N.Y. 2008) (allegations that a corporation is motivated to avoid bankruptcy "do not support an inference of scienter"); *In re Emex Corp. Sec. Litig.*, 2002 WL 31093612, at \*6 (S.D.N.Y. Sept. 18, 2002) ("A desire to raise much needed capital is an insufficient generalized motive to support an inference of scienter.").

Plaintiff next argues that the Restatements were "far from voluntary," and not reported of Enservco's "own accord" (Opp.15, 26, 32), but the Court may not consider these arguments because they are not in the CAC. The CAC alleges only that the need to restate Enservco's financials was "discussed with Plante Moran." (¶252.) This allegation does not create an inference that Restatements were involuntary, or else the only time a restatement would *not* create an inference of scienter would be if a company's officers were to refrain from discussions with auditors. "[T]o hold otherwise would subject every financial restatement to liability." *In re Molson Coors*, 2020 WL 13499995, at \*4.

Regardless, even if Plante Moran played a role in Enservco's decision to restate, this would not create a strong inference that Defendants acted with scienter.   Auditors suggest courses of action on accounting matters all the time, including for prophylactic reasons, or to correct benign mistakes. That is why companies hire them. Plaintiff cites but one case, *Oregon Laborers Emp'rs Pension Trust Fund v. Maxar Techs. Inc.*, 2020 WL 5500457 (D. Colo. Sept. 11, 2020) with clearly inapposite facts: the relevant accounting decisions were "publicly questioned and the market reacted negatively" *before* the company took action. *Id.* at \*15 n.6. Here, the opposite is true.

7

### 1.    The Opposition cannot create an inference of scienter by characterizing the subject matter of the Restatements as "simple."

In addressing the import of Enservco's GAAP errors, Plaintiff attempts to recast such errors as "simple" and "straight-forward." (Opp.17-18.) This misguided effort fails because it impermissibly contradicts allegations in the CAC, which describes Enservco's accounting issues or financial instruments as "complex" ten different times. (¶¶146, 150, 153-54, 169, 186, 204, 216, 225, 234.)

Even if it were properly alleged, Plaintiff's characterization of the three accounting errors as "simple" is belied by publicly available information. For example, although Plaintiff claims that Enservco's error in reporting certain deferred amounts of tax assets as "egregious" (Opp.20), publicly available authorities describe the tax section underlying that error—Internal Revenue Code section 382—as an "intricate construct that usually numbs the mind with its complexity and often baffles the senses."[7] One need only read the prolix complaint, its descriptions of the alleged errors, and the *lengthy* accounting rules Plaintiff cites to, including ASC 470 (¶¶102-103), which is 367 pages long (Ex. 28), to conclude that the errors were far from "simple" or "straightforward."

Nor was anything about the ERC Error—relating to a tax credit first made available during the pandemic, with no prior IRS interpretation—"straight-forward" or "simple." Plaintiff's citation to IRS guidance (Opp.18) fails because the CAC does not

---

[7] (Ex. 27, *Alvarez & Marshal*, "Section 382: Complexity and Simplicity at its Finest" (Jan. 10, 2012).)

allege that any Defendant was aware of, but ignored, such guidance. Indeed, the CAC alleges the *opposite*: in applying for the ERCs, Enservco *relied* on "third-party expert advice." (¶118.) That *negates* any inference of scienter, because one would never rely on third-party experts if one were scheming to dupe investors.

Plaintiff also cannot create an inference of scienter by pointing to Defendants' awareness of certain "Contemporaneous Facts" that are plainly insufficient. (*See* Opp.19.) To use Plaintiff's words, if "what matters is the *accounting treatment*" on three topics (Opp.18), the CAC fails to allege that any Defendant *knew* (or recklessly disregarded) that Enservco's *accounting treatment* for any later restated item was wrong.

For instance, it is insufficient that the CAC alleges that Defendants Murphy or Hargrave knew the value of the Warrants (*See* Opp.19-20, citing ¶¶107, 112-14), since it fails to allege facts showing that the Individual Defendants knew that the *accounting treatment* of the Warrants was wrong. Similarly, it is insufficient that the CAC alleges that Defendants "understood the material impact of the ERCs" (¶115), or that management "underst[ood]" the CARES Act (¶118, *see* Opp.20), because the CAC does not allege that any Defendant knew that the *accounting treatment* of the ERCs was wrong. Having relied on third-party "expert advice" in claiming the ERCs (¶118), there are no allegations that any Defendant knew that part of the amount claimed for ERCs was ineligible "due to the aggregation of eligible employees at the Company and its subsidiaries." (¶109.) *See Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp. 2d

9

662, 680 (D. Colo. 2007) (dismissing complaint that failed to show the defendant was "aware that it was utilizing improper accounting procedures").

Plaintiff's allegations about scienter are particularly weak because the rest of the CAC *undermines* Plaintiff's argument. The CAC alleges that Hargrave "did not have a firm grasp on accounting," lacked expertise in "doing the nitty gritty accounting work," and had a "hard time understanding accounting." (¶145.) Plaintiff has not even tried to explain the inconsistency between the CAC's allegations of accounting ignorance and the Opposition's arguments about knowing accounting fraud.

At most, the Opposition argues that these errors demonstrated a "material weakness in internal controls" (Opp.9, 33), but "the lack of adequate controls *arguably cuts against* an inference of scienter." *In re Molson Coors*, 2020 WL 13499995 at *6 (emphasis added). *Molson Coors* is directly on point; contrary to Plaintiff's argument (Opp.33), every single factor lacking in that case is equally absent here.

### 3. In arguing for scienter based on "magnitude," Plaintiff gets both the law and the facts wrong.

With regard to the issue of "magnitude," the Opposition gets both the law and the facts wrong in multiple respects.

First, Plaintiff ignores that "the size of the loss does not suggest that [company] executives knew or recklessly disregarded the risks." *Anderson*, 827 F.3d at 1251.

Further, as Defendants previously explained, the Restatements were not of "significant magnitude." The so-called Warrant Issuance Error and the ERC Error were

made in one Restatement only because *collectively*, they surpassed the materiality threshold. (*See* Opening.Br.18-20.) Had they been made individually, Enservco would simply have corrected them "in future filings." (¶38.) Plaintiff never argues otherwise, forfeiting any argument to the contrary. *Anderson*, 827 F.3d at 1238-39.

Nor does Plaintiff ever acknowledge how the CAC misleadingly uses ellipses to omit a full description of Enservco's disclosures indicating the *in*substantial nature of the relevant errors. Enservco truthfully told investors, in connection with the First Restatement, that correcting the Warrant Issuance and ERC Errors would "have no impact on revenues, operating expenses, or loss from operations," or on "Adjusted EBITDA." (Ex. 4, at Item 4.02.)

Plaintiff claims that the true measure of "magnitude" is "net income" (Opp.19), but he ignores cases that measure "magnitude" (or lack thereof) based on other financial criteria, including "losses," *Anderson*, 827 F.3d at 1051, "tax liabilities," *In re Molson Coors*, 2020 WL 13499995, at *5, or "revenues." *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1113 (10th Cir. 2015). No one financial metric determines whether a restatement is of such significant magnitude so as to create a strong inference of scienter. Plaintiff's "magnitude" argument fails because Enservco's restatements had no impact on *many* different metrics, including "revenues, operating expenses, loss from operations," or "Adjusted EBITDA." (Ex. 4, at Item 4.02.)

Plaintiff's use of cherry-picked, post-hoc math—focusing on percentages of "between 19% to 80%"—to conclude years later that such percentages in change of net

11

income "lend further weight to an inference of scienter" (Opp.19) is improper fraud-by-hindsight. The few cases Plaintiff cites are light-years different from this one. *Cf., e.g.*, *In re Qwest Commc'ns, Int'l, Inc.*, 396 F. Supp. 2d 1178, 1194 (D. Colo. 2004) ("many hundreds of millions of dollars" in a "sustained pattern of repeated manipulations" over a "period of more than 2 ½ years").

### 4.    Scienter may not be inferred from made-up allegations about the departures of Hargrave and Donovan Kelly.

Plaintiff's arguments about the resignations of Hargrave and non-defendant Donovan Kelly (*see* Opp.21-23) are not found in the CAC, are improper fraud-by-hindsight, and hence should be rejected.

Plaintiff's argument that both Hargrave and Kelly "resigned at the same time" (Opp.22) is irrelevant. Nothing about two somewhat contemporaneous employee departures—in the midst of a pandemic, exceptional industry challenges, and other issues—creates a strong inference of scienter. *In re Hertz Global Holdings*, 905 F.3d 106, 119 (3rd Cir. 2018). Plaintiff's argument that no "successor [was] identified for Hargrave" (Opp.23), is found nowhere in the CAC and is contradicted by Enservco's SEC filings, which announced Hargrave's successor. (*See* Ex. 29.)

In the end, this case fits comfortably within the rule of *In re Molson Coors*, 2020 WL 13499995, at *11, which held that executive departures had "no weight" in the scienter analysis because there were no allegations explaining why any departure was suspicious. The timing of Hargrave's departure is not suspicious because (1) it is

12

comparable to other, prior executive tenures (*see* Opening.Br.22);[8] and (2) other allegations give a more plausible reason for Hargrave's departure—fatigue from burden and overwork. (*See* Opening.Br.22, citing ¶¶4, 58, 142, 144-45.) Here again, the Opposition completely walks away from the CAC's allegations that Hargrave was performing *Herculean* tasks for years that would have burned her out in *any* environment, much less during the pandemic. (*See* ¶¶144-145.)

### 5. Unpleaded contentions about the dismissal of Enservco's auditing firm cannot support an inference of scienter.

Plaintiff's argument about the dismissal of Enservco's auditor, Plante Moran, hinges on the unpleaded contention that "accounting errors were *detected* by Plante during its annual audit in March 2022." (Opp.24.) This is completely made up.

On this issue, the CAC alleges *only* that the errors preceding the Restatements "were discussed" with Plante Moran. (¶252.) Merely "discussing" something with an auditor does not mean that the auditor "detects" the accounting errors. An equally plausible inference is that Enservco detected the errors once new rules for certain issues

---

[8] Plaintiff bizarrely argues that the Court is "prohibited" from considering publicly available analyst reports (Opp.23) even though such reports are matters of which courts typically take judicial notice. *Sorkin, LLC v. Fischer Imaging Corp.*, 2005 WL 1459735, at *2 (D. Colo. June 21, 2005). Regardless, the tenures of other Enservco executives are publicly available and testable through *other* materials of which the Court can take judicial notice, such as SEC filings. Indeed, one need only look at other SEC filings to see that past Enservco executives departed the company after similar periods of time. (*See* Exs. 30-32 (the two CFOs that immediately preceded Hargrave, Tucker Franciscus and Dustin Bradford, had tenures of just under 6.5 months, and just under 18 months, respectively). Compared to Franciscus and Bradford, Hargrave's tenure (33 months, *see* ¶27) is not suspicious at all.

were "subsequently clarified" and it had the advice of other "third-party expert[s]," as Enservco candidly stated in its SEC filings. (*See* Ex. 5; ¶118.)

Further, Plaintiff's argument about Plante Moran ignores Enservco's publicly stated reason for dismissing Plante Moran: "external staffing issues." (¶148.) By contrast, the other companies that made "fishy" or "suspicious" dismissals of their auditors (*see* Opp.25) did not have a contemporaneous reason for doing so. Nor did they do so *months* after the accounting restatements like Enservco did.[9]

### 6.    Defendants' positions with Enservco cannot support an inference of scienter.

Plaintiff's argument that scienter can be inferred from Defendants' "positions" with Enservco or the filing of inaccurate SOX certifications (Opp.26-27) ignores that the Tenth Circuit has "rejected the notion that knowledge may be imputed solely from an individual's position with the company." *Wolfe v. Aspenbio Pharma, Inc.*, 587 F. App'x 493, 497 (10th Cir. 2014) (affirming dismissal); *see Anderson*, 827 F.3d at 1245 (similar). The Tenth Circuit has also rejected the argument—repeated in the Opposition—that the filing of inaccurate SOX certifications can add "to the scienter calculus." *In re Zagg Inc. Sec. Litig.*, 797 F.3d 1194, 1205 (10th Cir. 2015). In response, Plaintiff argues only that a defendant's position (or inaccurate SOX certifications) can "*add* to an inference of scienter" (Opp.26), but the CAC actually *subtracts* from such an inference by alleging

---

[9] Plaintiff Ali Saee filed this action *before* Enservco dismissed Plante Moran (*see* Dkt.1), demonstrating that Plaintiff's argument about Plante Moran's dismissal is made up after-the-fact.

14

that Hargrave lacked accounting "skill[s]" or "knowledge" (¶145), which "further cuts against an inference of scienter." *Molson Coors*, 2020 WL 13499995, at *8.

### 7.    Inadequate internal controls cannot support an inference of scienter.

The Opposition's argument that Enservco's internal controls over financial reporting (the "ICFR Statements") support an inference of scienter (Opp.27-29) is deficient for two reasons. First, it is based on arguments not found in the CAC, which fails to allege that the Individual Defendants "were aware," but "refused to remediate," problems with ICFR (Opp.27), and similarly fails to allege that Murphy "is believed to have been informed of staffing shortfall[s]." (Opp.28.)

Second, the problem the CAC *does* identify—staffing issues—is apparent only in hindsight. Paragraphs 142-148 of the complaint imply, at most, that Enservco did not hire the right people to perform "highly technical" accounting work when vacancies arose. (¶147.) But there is no allegation that any Defendant knew *at the time* that staffing issues rendered Enservco's controls inadequate. Enservco only learned that *later*, when it identified the need to make the Restatements, which is insufficient. *See City of Philadelphia*, 264 F.3d at 1260.

### 8.    Enservco has not waived any argument about the lack of scienter with regard to liquidity statements.

Next, Plaintiff's bizarre "waiver" argument (Opp.29-30) lacks merit. Enservco's Opening Brief moved to dismiss "the action" or "the CAC" with prejudice. (Opening.Br.1, 40.) There is no "aspect" of Plaintiff's claim that Enservco did not move

15

to dismiss. Defendants may not have predicted that Plaintiff would make the (meritless) argument he did about certain liquidity statements, but that is not a basis for waiver. Enservco raised the *issue* of a lack of scienter, which is sufficient to preserve the issue. *See, e.g.*, *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1291 (D. Colo. 2013) (courts review issues in a reply brief if they are "offered in response to an argument raised in the [plaintiff's] brief").[10]

### 9.    The Opposition does not create an inference of scienter by alleging "recklessness."

To the extent Plaintiff argues that Defendants acted only with recklessness, nothing alleged in the CAC rises to the level of recklessness. Recklessness is not negligence or even gross negligence; it is akin to "conscious disregard," *Smallen v. The Western Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020), and is closer to "a state of mind approximating actual intent.'" *In re Zagg*, 797 F.3d a 1206 (citation omitted). Recklessness is permitted as an inference *only* if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *In re Level 3*, 667 F.3d at 1343 (quotation omitted).

Plaintiff argues that the "DTA Error" was the type of "willful ignorance" that prior courts have sustained as "recklessness" (Opp.21), but in support he cites only *Adams*, an authority issued *before* the Supreme Court clarified the scienter standard in

---

[10] The cases Plaintiff cites to support the "waiver" argument (*see* Opp.30) are inapposite because they address waiver of entire issues that were never raised at all.

*Tellabs*, and *before* the Tenth Circuit applied that standard to recklessness in *Level 3. See* 667 F.3d at 1343 (citing *Tellabs*). The CAC lacks allegations that Defendants recklessly disregarded risks of making false statements that a certain portion of deferred tax assets might not be realizable for tax purposes, as opposed to the more compelling inference—supported by the timing of the Second Restatement—that Defendants identified the DTA Error immediately after the First Restatement and quickly issued a correction. (*See* Opening.Br.8-9.)

Nor is Plaintiff's argument about staffing shortages (Opp.28) sufficient to qualify as reckless. The CAC's allegations describe thin staffing, employees with non-advanced degrees, and hiring the people with the wrong skills to address "highly technical" accounting issues. (¶¶142-148.) Again, Plaintiff's argument that Defendants "recklessly disregarded" control failures (Opp.28) requires the Court to "stack inference upon inference"—that Defendants knew they were hiring the wrong people, that the people who were working tirelessly would get things wrong, third-party experts wouldn't help, and that this would all lead to errors of such significant magnitude so as to require Restatements—but that is all impermissible hindsight. Plaintiff's argument is "at best an assertion that defendants were negligent," *In re Gold Resources*, 776 F.3d at 1116, which is insufficient.

17

**B.    The more cogent and compelling inference is that Enservco made benign mistakes.**

Plaintiff's final resort is to the "holistic analysis" required by *Tellabs* (*see* Opp.30-33), but Plaintiff's argument is doubly wrong because it (1) does *not* consider *all* of the available and properly considered information; while at the same time (2) referring to arguments not in the CAC, which may *not* be considered.

By far, the more cogent and compelling inference is that Enservco made three benign accounting errors in the midst of an exceptionally challenging industry-wide downturn coinciding with the pandemic and related staffing shortages, and then voluntarily reported them immediately. (*See* Opening.Br.30-34.) Enservco accurately told investors that the First Restatement "will have no impact on revenues, operating expenses, or loss from operations," or on "Adjusted EBITDA". (Ex. 4, at Item 4.02.) Plaintiff cannot be claiming to conduct a "holistic" analysis when he misleadingly and repeatedly omits this statement from his briefing.

Defendants also identified at least four powerfully persuasive cases dismissing similar complaints where the holistic analysis showed at most benign mistakes or mismanagement, including in cases of accounting restatements with GAAP "violations." *In re Level 3*, 667 F.3d at 1345; *In re Gold Resources*, 776 F.3d at 1116; *In re Molson Coors*, 2020 WL 13499995, at \*10; *Red Robin*, 505 F. Supp. 2d at 688. None of the factual differences Plaintiff identifies (Opp.33) justifies disregarding these cases.

18

Plaintiff tries to claim that some of these authorities don't apply by making up allegations not in the CAC: Plaintiff argues, for example, that *Molson Coors* should be disregarded because unlike in that case, here there was a "*known*, but undisclosed, weakness." (Opp.33.) But Plaintiff never alleges *in the CAC, here*, that any Defendant knew of, but failed to report, an internal-controls weakness.

Similarly, Plaintiff improperly ignores the authorities holding that voluntary efforts to fix problems "suggest a motive to remedy problems, not to conceal them," *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1147 (D. Colo. 2011). The CAC is replete with allegations about the numerous steps Enservco took to *voluntarily* address these issues, including by regularly informing investors of risk factors (¶¶ 157, 170, 187, 205) cash constraints and staffing challenges (¶¶4, 59, 83, 88, 148), twice restating its financials (¶¶117, 136) and by hiring a new public accounting firm (¶264). The most cogent and compelling inference is that Defendants undertook good faith efforts to fix inadvertent errors. *See Red Robin*, 505 F. Supp. 2d at 678-79 ("[I]t is difficult to conceive of how Plaintiff can rely upon the Company's public disclosures of corporate deficiencies to support its allegation that Red Robin intentionally misled the public.").

Plaintiff cites *no* Tenth Circuit case allowing similar allegations to proceed past a motion to dismiss. The few cases he cites are factually inapposite or apply the wrong standard. The decision in *Croker* (Opp.32) applied a pre-*Tellabs* "notice pleading" standard, including requiring "district courts to draw reasonable inferences from indirect allegations when direct allegations of scientor [sic] are unavailable." 2006 WL 2035366, at *12. No Tenth Circuit case has ever cited or applied this standard.

Ultimately, dismissal is the only sensible outcome, just as in many other accounting restatement or GAAP violation cases where the more compelling inference was that mistakes were benign and did not constitute intentional securities fraud. *See Gold Resources*, 776 F.3d at 1113-14; *Ceridian*, 542 F.3d at 246-48; *Hertz*, 905 F.3d at 117; *Molson Coors*, 2020 WL 13499995, at *6-12; *Podraza*, 790 F.3d at 838.[11]

## II.    Plaintiffs Fail to Adequately Plead Loss Causation.

Plaintiff's loss-causation arguments can be rejected for reasons stated in the Opening Brief at 35-38. Plaintiff cites no cases where the court held there was price inflation when the price *declined* after supposedly false, rosy statements.[12] *See In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011).

---

[11] The CAC also improperly lumps all Defendants together, in violation of the requirement to state with particularity what "the defendant" did. *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004); *In re Crocs*, 774 F. Supp. 2d at 1152. Plaintiff says the CAC "meticulously distinguish[es]" between Defendants (Opp.31 n.10), but the CAC shows otherwise. (*See* ¶¶237-38, 241-42 ("Defendants"), 252 (using the passive voice).)

[12] Plaintiff asserts that "the Supreme Court recently acknowledged the concept of 'inflation maintenance'" (Opp.35), but the Court "expressed no view on its validity or

20

## CONCLUSION

The Court should dismiss the CAC with prejudice because Plaintiff's arguments

are classic fraud-by-hindsight that the Tenth Circuit routinely rejects. *Anderson*, 827 F.3d

at 1247; *MHC Mutual*, 761 F.3d at 1122.


Dated: May 25, 2023.                **FAEGRE DRINKER BIDDLE &
                                     REATH LLP**

                                    */s/ Jeffrey P. Justman*
                                    Michael R. MacPhail
                                    Megan M. Farooqui
                                    Jeffrey P. Justman
                                    1144 15th Street, Suite 3400
                                    Denver, Colorado 80202
                                    Telephone: (303) 607-3500
                                    Michael.MacPhail@faegredrinker.com
                                    Jeff.Justman@faegredrinker.com
                                    Megan.Farooqui@faegredrinker.com

                                    *Attorneys for Defendants*

---

its contours." *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*, 141 S. Ct. 1951, 1959
n.1 (2021).

## PRACTICE STANDARD III(A)(1) CERTIFICATION

I hereby certify that the foregoing motion complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as modified by the Court's April 17, 2023 Order Granting Defendants' Unopposed Motion to Exceed Word Limit (Dkt. 57).

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of May 2023, a true and correct copy of the

foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO**

**DISMISS** was e-filed with the Court through CM/ECF and served on all counsel of

record.

/s/ Paul D. Bryant
Paul D. Bryant, Legal Administrative Assistant

23