# Exhibit 27



INSIGHTS  /  BUSINESS & INDUSTRY INSIGHTS

January 10, 2012

# SECTION 382: COMPLEXITY AND SIMPLICITY AT ITS FINEST

Section 382 can best be described as an intricate construct that usually numbs the mind with its complexity and often baffles the senses with its result. Since its revision as part of the Tax Reform Act of 1986, Section 382 has largely been a form-driven provision filled with objective rules and confusing interpretations. Taxpayers and practitioners often note both the administrative burden associated with preparing and maintaining the required analyses, as well as the lack of clarity in applying key components of the Regulations.

The Internal Revenue Service (the "Service") has strived, with varying degrees of success, to clarify and simplify the application of Section 382. The recent issuance of proposed regulations (published in November 2011) regarding the application of the segregation rules to small shareholders is the Service's latest effort to ease some of the administrative burden and provide clarity on certain Section 382 matters. This follows other recent guidance, in the form of various notices and rulings, on key Section 382 matters.



determining the impact of potential merger and acquisition transactions, or basic tax planning analyses.

## IRC Section 382 —  In General

Section 382 imposes an annual limitation on the amount of taxable income that may be offset by net operating loss ("NOL") carryforwards to the extent a loss corporation experiences an ownership change. An "ownership change" occurs in the event one or more 5-percent shareholders increase their ownership in the loss corporation stock by more than 50 percentage points over their lowest ownership percentage during the testing period (generally the three years immediately prior to the change date). If an ownership change occurs, the annual Section 382 limitation is calculated by multiplying the fair market value of the loss corporation's stock immediately before the ownership change by the federal long-term tax-exempt rate.

Starting with Notice 2003-65, the Service has issued a fair amount of guidance — in varying forms — seemingly aimed at providing administrative conveniences in light of certain technical complexities. This effort gained even more momentum with the onset of the Great Recession and the government's attempt to further certain economic policies under the cloak of tax policy.

## Notice 2008-78 and the Anti-Stuffing Rule

Notice 2008-78 crystallized a common position among practitioners in regard to the anti-stuffing rule in Section 382(l)(1), which essentially excludes from the value of a loss corporation, for purposes of determining the annual Section 382 limitation, any capital contributions made to the loss corporation during the two years immediately preceding a change date. In the absence of applicable regulations, practitioners had historically looked to the legislative history for guidance — most notably, the "working capital exception" whereby the taxpayer provides a detailed tracing to illustrate that such capital was used to pay operating expenses arising in the ordinary course of business.

Consistent with this position, Notice 2008-78 provides that a capital contribution shall not be presumed to be part of a plan whose principal purpose is to avoid or increase a Section 382 limitation solely as a result of having been made during the two-year period ending on the change date. Further, a contribution can only reduce the value of a loss corporation if it is part of a plan whose principal purpose is to avoid or increase a Section 382 limitation. The determination for whether a capital contribution is subject to such a plan is based on the facts and circumstances surrounding the contribution, unless the contribution falls within



## PLR 200902007 and Reliance on Public Filings

The "investment advisor" exception has existed for quite some time; however, its application has been challenging in some respects due to the inconsistency of certain Securities and Exchange Commission (SEC) filings. The issuance of Private Letter Ruling 200902007 has helped alleviate some of this ambiguity.

The Regulations provide for certain presumptions in identifying 5-percent shareholders for purposes of Section 382. For a given testing date, a loss corporation that is also an SEC registrant may rely on the presence or absence of certain public filings to identify direct 5-percent shareholders. However, investment advisors and other entities that are the "reporting owner" of the loss corporation's stock for public reporting purposes may not be the true "economic owner" of the underlying stock for Section 382 purposes.

The Service clarified in PLR 200902007 that the economic owner is the person who has the right to the dividends and proceeds from the sale of the stock. To the extent the information reported on a Schedule 13D or 13G does not establish that a person is the economic owner of the loss corporation stock, the loss corporation can rely on this information provided that the loss corporation does not have actual knowledge to the contrary. Again, this guidance has been generally well received in the tax community.

## Notice 2010-50 and Fluctuations in Value

Section 382 provides that each 5-percent shareholder's ownership is determined by comparing the relative fair market value of the stock owned in relation to the total fair market value of the corporation's outstanding stock. However, absent exceptions in the Regulations, any change in proportionate ownership of the stock of a loss corporation attributable solely to fluctuations of value shall not be taken into account.

Historically, taxpayers and practitioners have had a difficult time interpreting what was meant by the word "solely" and how to apply the operative rules accordingly. After a series of rulings attempting to address the issue, the Service provided guidance, in the form of Notice 2010-50, for measuring owner shifts of loss corporations that have multiple classes of stock outstanding. This Notice provides two permitted methodologies — the Full Value Methodology (FVM) and the Hold Constant Principle (HCP) —  to account for the effect of fluctuations in the value of one class of stock to another class of stock.

Case No. 1:22-cv-01267-DDD-STV    Document 60-8    filed 05/25/23    USDC Colorado
pg 5 of 10

5/18/23, 7:52 AM                          Section 382: Complexity and Simplicity at its Finest | Alvarez & Marsal | Management Consulting | Professional Services



value of the stock owned by such shareholder to the total fair market value of the outstanding stock of the corporation.

Effectively, all shares are marked to market on each testing date, and changes in ownership resulting from fluctuations in value are taken into account.

## (2) Hold Constant Principle

Under this methodology, the value of a share relative to the value of all other shares of the corporation is established on the date that share is acquired by a particular shareholder.

On subsequent testing dates, the percentage interest represented by the share is determined by factoring out fluctuations in the relative values of the classes of stock that have occurred since the acquisition.

This Notice essentially provides that the Service will not challenge any reasonable application of either the FVM or HCP provided that a single methodology is applied consistently to all testing dates in the consistency period. Under the consistency period rule, a taxpayer may adopt any reasonable methodology as long as any inconsistent returns in the consistency period can be and are amended. This Notice is particularly helpful for early-stage companies using preferred equity financing in lieu of debt financing.

## Proposed Regulation — Application of Segregation Rules to Small Shareholders

Proposed regulations were issued in November 2011 in response to comments on Notice 2010-49, which addressed the treatment and application of the aggregation and segregation rules to less than 5-percent shareholders. Notice 2010-49 provided for two approaches - the ownership tracking approach and the purposive approach.

## Proposed Regulations — Purposive Approach

The proposed regulations suggest revisions to the purposive approach and are intended to lessen the administrative burden and Section 382 implications associated with transactions that are unlikely to implicate Section 382 policy concerns.

Segregation rules will not apply to certain secondary transfers of loss corporation stock to small shareholders by entities or individuals who are 5-percent shareholders, as the stock transferred will be treated as being acquired proportionately by the public groups existing at the time of the transfer.

Case No. 1:22-cv-01267-DDD-STV    Document 60-8    filed 05/25/23    USDC Colorado pg 6 of 10

5/18/23, 7:52 AM                    Section 382: Complexity and Simplicity at its Finest | Alvarez & Marsal | Management Consulting | Professional Services



year.

Segregation rules will not apply to a transaction if, on a testing date on which the rules would otherwise apply, the 5-percent entity owns 10 percent or less by value of all the outstanding stock of the loss corporation (the ownership limitation), and the 5-percent entity's direct or indirect investment in the loss corporation does not exceed 25 percent of the entity's gross assets.

Segregation rules will apply to transfers from a higher tier entity to less than 5-percent shareholders only if the seller indirectly owns 5 percent or more of the loss corporation.

Comments and/or requests for a public hearing concerning the proposed regulations were requested and can be made for up to 90 days after publication of the proposed regulations in the Federal Register.

**Alvarez & Marsal Taxand Says:**

The IRS guidance provided over the past few years has significantly changed the Section 382 landscape for the better. The IRS's efforts in this area have gone a long way toward simplifying a complex area of the Code. Taxpayers need to be mindful of these changes (and opportunities) in their tax planning, specifically with regard to understanding the ability to chose and apply various methodologies. Having your Section 382 model updated and current is no longer just a best practice but essentially a requirement in today's tax world.

**Notes:**

Hereinafter, unless specifically stated otherwise, all references to "Section" or "§" shall mean sections of the Internal Revenue Code of 1986, as amended from time-to-time (the "Code"), or the U.S. Treasury regulations promulgated thereunder (the "Regulations").

Notice 2003-65, I.R.B. 2003-40 (September 12, 2003).

Certain PLRs have ruled that "investment advisors" as disclosed on a Schedule 13D or G should not be considered the beneficial owner of such stock but rRather, its clients-investees should be considered the beneficial owners and so long as none of these individuals own more than 5 percent of the stock of the loss corporation, the ownership at the investment advisor level should be considered as part of the public. See generally PLR 200747016 (Nov. 23, 2007).

Case No. 1:22-cv-01267-DDD-STV     Document 60-8     filed 05/25/23     USDC Colorado
pg 7 of 10

5/18/23, 7:52 AM                    Section 382: Complexity and Simplicity at its Finest | Alvarez & Marsal | Management Consulting | Professional Services



## Disclaimer

As provided in Treasury Department Circular 230, this publication is not intended or written by Alvarez & Marsal Taxand, LLC, (or any Taxand member firm) to be used, and cannot be used, by a client or any other person or entity for the purpose of avoiding tax penalties that may be imposed on any taxpayer.

The information contained herein is of a general nature and based on authorities that are subject to change. Readers are reminded that they should not consider this publication to be a recommendation to undertake any tax position, nor consider the information contained herein to be complete. Before any item or treatment is reported or excluded from reporting on tax returns, financial statements or any other document, for any reason, readers should thoroughly evaluate their specific facts and circumstances, and obtain the advice and assistance of qualified tax advisors. The information reported in this publication may not continue to apply to a reader's situation as a result of changing laws and associated authoritative literature, and readers are reminded to consult with their tax or other professional advisors before determining if any information contained herein remains applicable to their facts and circumstances.

To learn more, visit https://www.alvarezandmarsal.com or www.taxand.com.

BUSINESS & INDUSTRY INSIGHTS

## Pillar 2: Direct Real Estate Investments

May 15, 2023

In this publication, our experts Roel de Vries and Nick Crama explore the considerations for direct real estate investments under Pillar 2.

BUSINESS & INDUSTRY INSIGHTS

## Do You Want a More Efficient Tax Department?

May 15, 2023

effective tax rate (ETR) and top-up tax

A&M's Managing Director Cody Dixon and Director Luke Cornetta recently authored an article for

Case No. 1:22-cv-01267-DDD-STV    Document 60-8    filed 05/25/23    USDC Colorado
pg 8 of 10

5/18/23, 7:52 AM    Section 382: Complexity and Simplicity at its Finest | Alvarez & Marsal | Management Consulting | Professional Services



## Dutch Tax Entity Classification Rules: Extended Timeline

May 11, 2023

On 8 May 2023, the Dutch Ministry of Finance published a letter outlining policy intentions for the coming years.

A&M NEWS & RELEASES

## Senior Director James Deets Named a 2023 Best Lawyer in Dallas for Compensation & Benefits by D Magazine

May 9, 2023

A&M is proud to announce Senior Director James Deets has been named a 2023 Best Lawyer in Dallas for Compensation & Benefits by D Magazine.

## AUTHORS



### CHRISTOPHER HOWE
MANAGING DIRECTOR
UNITED STATES







UNITED STATES

**ADAM BENSON**
MANAGING DIRECTOR
UNITED STATES

CONTACT US TODAY

SUBSCRIBE TO OUR BULLETIN

DOWNLOAD PDF VERSION

FOLLOW & CONNECT WITH US

     

   



Global Locations

Careers

Contact Us

Expertise

About A&M

Alumni

Industries

A&M Capital

Insights

A&M Capital Real Estate

Our People

Privacy Notice

Privacy Shield Notice

California Privacy Notice

Cookie Notice

Terms of Use

**A&M Bulletin Sign-Up**

EMAIL

SUBSCRIBE

© Copyright 2023, Alvarez & Marsal Holdings, LLC. All Rights Reserved.

ALVAREZ & MARSAL®,          ®,          ®,                    ® and A&M® are trademarks of Alvarez & Marsal Holdings, LLC.

Note: Alvarez & Marsal employs CPAs, but is not a licensed CPA firm.