IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:22-cv-01267-DDD-KAS

ALI SAEE, individually and on behalf of all others similarly situated, and
JAN LAMBERT,

    Plaintiffs,

v.

ENSERVCO CORPORATION,
CROSS RIVER PARTNERS, L.P.,
CROSS RIVER CAPITAL MANAGEMENT LLC,
RICHARD A. MURPHY, and
MARJORIE A. HARGRAVE;

    Defendants.

## ORDER ON MOTION TO DISMISS

Defendant Enservco, in debt and thinly staffed, disclosed incorrect financial statements in filings with the United States Securities and Exchange Commission. It later publicly corrected those statements. Plaintiffs, on behalf of a purported class of investors who acquired Enservco securities in the interim, allege that Enservco and its controlling officers knowingly and fraudulently disclosed incorrect information in violation of Section 10(b) and 20(a) of the Securities Exchange Act of 1934.

Enservco moves to dismiss the Plaintiffs' claims for failure to show that the disclosures were made with the requisite state of mind to satisfy Section 10(b). The motion to dismiss is granted.

- 1 -

## BACKGROUND

The Amended Complaint is lengthy, but its allegations can be summarized simply. As alleged in the amended complaint, Enservco provides specialized services in the oil and natural gas industry. Doc. 34 at 5. Its largest stockholder was Defendant Cross River Partners, L.P. Defendant Richard Murphy serves as Enservco's President and CEO, and as Manager of Cross River. *Id.* Defendant Marjorie Hargrave was Enservco's Chief Financial Officer. *Id.*

During the alleged class-period of March 23, 2021 through September 1, 2022, Enservco had substantial debts, upwards of $15,000,000, which it did not have the assets to pay. *Id.* at 7–9. It successfully refinanced this debt on March 28, 2022, while also announcing that it needed to restate its 2021 quarterly financial reports to correct misstatements. *Id.* at 9. The restatements were filed on April 11, 2022, but only a week later, Enservco announced a second accounting error which it needed to correct by restatement. *Id.* Both restatements acknowledged that the statements were made in part due to ineffective or insufficient accounting control procedures. *Id.* The misstatements had served to understate Enservco's net losses and overstate its available assets throughout 2021. *Id.* at 9–10. Soon after, Enservco's CFO, Defendant Hargrave, and its principal accounting officer both resigned. *Id.* Enservco also fired its auditing firm, Plante Moran. *Id.* Plaintiffs allege that Enservco's stock fell sharply as result of these restatements, and they filed suit under the theory that the Defendants knowingly or recklessly made favorably incorrect financial statements to make itself more attractive to potential refinancers.

## LEGAL STANDARDS

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court must

decide whether the facts alleged in the complaint, if true, would entitle the claimant to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court must accept the alleged facts as true and view them in the light most favorable to the claimant. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the court need not accept as true conclusory allegations that are unsupported by factual averments. *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021). To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, accepted as true, allow the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

Plaintiffs bring their primary claim under Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder, which "prohibit making any material misstatement or omission in connection with the purchase or sale of any security." *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267, (2014)).[1] To establish a violation under section 10(b) and Rule 10b–5, a plaintiff must prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co.*, 573 U.S. at 267. Defendants do not at this

---

[1] Plaintiffs' second claim, under Section 20(a) of the 1934 Act, is only viable if their first claim succeeds. *See In re Gold Resources Corp. Sec. Lit.*, 776 F.3d 1103, 1118 (10th Cir. 2015) (holding that Section 20(a) claims necessarily fail if primary claims are dismissed).

point dispute most of these elements. Defendants only argue that the complaint insufficiently alleges scienter and causation of the economic loss.

A heightened pleading standard applies to allegations of a material misrepresentation or omission and scienter under the Private Securities Litigation Reform Act, 15 U.S.C. §78u-4. "In order to overcome a motion to dismiss, a complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *In re Level 3 Commc'ns Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012) (quoting 15 U.S.C. § 78u–4(b)(1)). It is under this heightened pleading standard that Plaintiff must show both scienter and loss causation.

Scienter is a mental state embracing "intent to deceive, manipulate, or defraud" as well as "recklessness." *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1247 (10th Cir. 2022). "Scienter is not limited to situations in which a defendant acted with the primary purpose of misleading shareholders; scienter also exists when a defendant acted with a reckless disregard of a substantial likelihood of misleading investors." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1150 (10th Cir. 2015).

Under the PSLRA, a plaintiff must, "with respect to each act or omission alleged . . . state with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added); *Pluralsight*, 45 F.4th at 1258-59. The claim survives dismissal "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts

alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

Plaintiffs' complaint provides five facts in support of that inference: *first,* the individual defendants had motive to commit securities fraud; *second*, the misstatements arose from deficiencies in internal control process; *third,* the magnitude of the accounting errors; *fourth,* the dual resignations of the CFO and PAO following the first restatement; and *fifth,* the dismissal of Enservco's auditing firm. As discussed below, these facts do not create a strong inference of scienter, and the opposing inference that Enservco's mistakes were inadvertent or negligent is more likely.

*First,* the motive alleged in the amended complaint is too generalized. True, Enservco stood to gain by understating is losses, and overstating its income, and the individual defendants stood to lose their jobs if the company failed. But that is true of all businesses, and all executives. "[G]eneral motives for management to further the interests of the corporation fail to raise an inference of scienter." *In Re Level 3 Comm's, Inc. Sec. Lit.*, 667 F.3d 1331, 1347 (10th Cir. 2012) (considering motivation to refinance corporate debt). Plaintiffs argue that strong motive exists where, as here, a company's survival allegedly hung in the balance. *See In re Williams Sec. Litig.,* 339 F. Supp. 2d 1206, 1234 (N.D. Okla. 2003). But Tenth Circuit precedent suggests even that would not be enough—"plead[ing] facts suggesting at most that the defendants possessed a motive and opportunity to mislead . . . 'are typically not sufficient in themselves to establish a strong inference of scienter'" *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1123 (10th Cir. 2014) (quoting *City of Philadelphia v. Fleming*, 264 F.3d 1245, 1269 (10th Cir. 2001)); *see also Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238-39 (10th Cir.

- 5 -

2016) (buying time to improve financial status does not contribute to an inference of scienter).

Nor is the refinancing motive theory watertight. As Defendants point out, it announced its first restatement before it secured its refinancing. *See* Docs. 49-3, -21. If the alleged fraud were perpetrated with the purpose of securing a critical refinance, disclosing it days before that refinance would defeat that purpose. Per the terms of the refinance, it could have unwound the entire process. See Doc. 49-22 at ¶3. Plaintiffs cannot meet their heavy burden by pleading motives that are neither specific nor consistent with Defendants' actions.

*Second*, the complaint alleges the restatements were necessitated at least in part by violations of generally accepted accounting principles ("GAAP"), in tandem with weak internal financial controls. But all parties agree that "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Fleming*, 264 F.3d at 1261. These violations only support a strong inference of scienter "when coupled with evidence that the violations . . . were the result of the defendant's fraudulent intent." *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1191 (10th Cir. 2003). As discussed above and below, this additional evidence of fraudulent intent needed to transform a GAAP violation into evidence of scienter under the heightened requirements that apply here simply does not exist. *Fleming*, 264 F.3d at 1261. Plaintiffs' response that the "simple" nature of the GAAP violations suggested scienter is not supported by the allegations in the complaint, which describes Enservco's accounting as "complex" multiple times.

*Third*, the magnitude of the misstatements, while significant, adds nothing to the calculus of scienter in light of Tenth Circuit precedent squarely rejecting that same argument. *Anderson*, 827 F.3d at 1247

("The plaintiffs argue that in light of the magnitude of the loss that Spirit ultimately sustained, Spirit must have had scienter when each of these occurrences took place. These arguments amount to allegations of 'fraud by hindsight,' which does not constitute securities fraud.") (quoting *Level 3*, 667 F.3d at 1347). "The size of the loss does not suggest that the . . . executives knew or recklessly disregarded" misstatements. *Id.*

*Fourth*, the resignations of Defendant Hargrave and the Principal Accounting Officer do not support a strong inference of scienter compared to alternative explanations. All parties agree that Enservco faced financial hardship. And the departure of accounting officers, after errors significant enough to require publicly restating financials, is not suspicious. It would perhaps be more surprising if those employees remained with a company after such errors slipped by under their watch. Defendants provide ample reason to believe that the resignations were consistent with normal employment patterns, given the typically short tenure of CFO's at Enservco. And even "forced resignation[s] are at most an acknowledgment that the company identified a better way of doing things moving forward, not an indicator that fraudulent intent existed at the time the alleged omissions occurred." *In Re Zagg, Inc. Sec. Lit.*, 797 F.3d 1194. Plaintiffs' bare assertion that the resignations are suspicious because of their proximity to the restatements does not provide an explanation for *why* the departures strongly imply scienter.

*Fifth*, Enservco's termination of its auditing firm fails to support scienter for similar reasons. Once again the complaint, despite its length, simply asserts that the termination was suspicious due to its proximity to the restatements. Conclusory statements and bare assertions will not survive dismissal under ordinary circumstances, and certainly not under the heightened pleading standard for 15 U.S.C.

- 7 -

§78u-4 claims.

Finally, it is telling that the general picture drawn in the complaint could describe a great many companies that voluntarily issue restated financials. That Enservco voluntarily brought the misstatements to light, and corrected them, "suggest[s] a motive to remedy problems, not to conceal them." *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1147 (D. Colo. 2011).

These facts, taken together or separately, do not suggest a strong inference that Defendants acted with "intent to deceive, manipulate, or defraud" or even with "recklessness." *Pluralsight*, 45 F.4th at 1247. Nor would they lead a reasonable observer to "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324. Far more compelling is the inference that Enservco's failure to comply with generally accepted accounting principles led to inadvertent or negligent accounting errors, which were later discovered by its auditor, and corrected with the approval or consent of the refinancing lender. "The strength of an inference cannot be decided in a vacuum. The inquiry is inherently comparative: How likely is it that one conclusion, as compared to others, follows from the underlying facts?" *Id.* at 323 Plaintiffs' claim requires a strong inference of scienter, and the claim fails without it.[2]

---

[2] Because that claim fails, so too does Plaintiffs' Section 20(a) claim. *See Fleming*, 264 F.3d at 1270. It is also not necessary to address Defendants' arguments regarding loss causation, or the questionable efficacy of Plaintiffs' imputing knowledge, intent and actions across the various Defendants as a group.

**CONCLUSION**

It is **ORDERED** that:

Defendants Motion to Dismiss, **Doc. 49** is **GRANTED**, Plaintiffs' claims are **DISMISSED without prejudice**.

DATED: March 4, 2024          BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge